Morning. May it please the Court, Morgan Fisher on behalf of the appellants. Before bringing it into my argument, I'd like to describe to you a little bit about this industry. This is a $7 billion industry, the industry of proofs of claim. Out of that $7 billion, $2 billion is unsecured debt. We're talking serious money. Atlas' scheme is simple. It buys unenforceable debt after bankruptcy cases are filed, files a claim on it, and seeks to trick unwitting debtors into making payments back and depriving legitimate creditors of payment. Additionally, by doing that claim and receiving money on those claims, it revives a statute of limitations that may never have existed in the first place. The 11th Circuit called the filing of unenforceable claims a deluge. I would ask if the 11th Circuit were here, what would they think of Atlas, a creditor buying claims after the bankruptcy cases file on unscheduled debt? That's not a problem with the bankruptcy code. That's just a problem with the administration. They need more trustees, I guess, in Maryland. And, you know, if your client had done what you're supposed to do under the bankruptcy code, we wouldn't be here today because you're supposed to list all your debts, whether they're stale or not, the date of the last transaction, but it wasn't done. To the contrary, Your Honor. We would be here because, first of all, we don't know who these people are. Okay, my clients have no idea who these creditors are. And it wasn't on a credit report. They didn't list it. They signed these schedules on their own. We have no idea who these people are. Had they come in and said, well, I have a debt that's five years old, I don't know what it is, or this is showing up on my credit report, we would have marked it as disputed on Schedule F. You compare the recent decision in Gatewood from the Eighth Circuit, that panel there, one of the key distinctions they made is they said, okay, you brought this creditor in. You scheduled them as a creditor. You didn't mark it as disputed. Why should you get the benefit of an FDCPA case? Aren't you just baiting them to come into court, file a claim? Maybe that debtor chose to voluntarily pay that debt. That's not the situation here. Different bankruptcy lawyers take different approaches. The sad truth about consumer bar is that many times your most important case is your next one. You just want to get it out the door. And that is the game that Atlas is playing. They know that. Trustees, you're right, do have an obligation under 704E to object to unenforceable claims. Similarly, Atlas has an obligation not to file an unenforceable claim. 101-5 goes to tremendous lengths to list all manner of claims that can be filed, matured and unmatured, disputed and undisputed. Unenforceable is not part of that statutory scheme, and nor should it be. And that's what the Eleventh Circuit was addressing. That's what the Eleventh Circuit realized. That this is simply a way of gaming the system, taking advantage of a system that perhaps does need more trustees. I would also point out, Judge Floyd, that a Chapter 13 trustee may not be in a position to know whether a statute of limitations has been revived. So simply because the proof of claim says 2009, they might not know. And it would certainly be too much of a burden to put on them to ask them to go through each individual debtor's schedules and say, well, is this debt older than three? Do you remember paying on this? Or something like that. The simple truth of the matter is they shouldn't be there in the first place. It's just like state court. You're a debt buyer. You're subject to these heightened scrutiny of FDCPA. You're not supposed to be there if you know the debt is unenforceable in the first place. The FDCPA is the hammer. Now, the FDCPA does not need the Bankruptcy Code, but the Bankruptcy Code needs the FDCPA. I'd suggest to you this is how we're going to put these people out of business. And I'd also suggest to you that this is beneficial not only to a debtor, but also to creditors. We endeavor in bankruptcy to pay unsecured creditors back as much as we possibly can. So legitimate unsecured creditors, including, for example, non-priority tax debt, legitimate unsecured creditors are harmed by this. And isn't that the very purpose of the FDCPA in the first place? It's for protecting consumer rights and ensuring that legitimate creditors get paid. Atlas Acquisitions is not a legitimate creditor because they filed an unenforceable claim. They knew it was unenforceable when they filed it. How are legitimate creditors harmed? Oh, because in Chapter 13, a debtor is going to propose a plan that's going to be anywhere from, in certain jurisdictions, 0% to 100%. So legitimate creditors, let's say the disposable income gets... So you're taking a certain pot of money and you're taking part of that and giving it to what you call an illegitimate creditor. It's taken away from the legitimate creditor. It takes away from the program distribution. So why are you saying that Atlas is not a legitimate creditor? Because under the Bankruptcy Code, under 101.5, an unenforceable claim does not give rise to being a legitimate creditor. And it's a very important distinction because 101.5 provides for a tremendous amount of different kinds of creditors. But aren't contingent and unmatured debts presently unenforceable? I'm sorry? Aren't contingent and unmatured debts presently unenforceable? They should still be scheduled and listed, and a contingent creditor would then get the benefit of filing a proof of claim. They would go through the objections process and determine the extent of that claim to see whether a promissory note, a third-party sign, or some event that would happen in the future would be listed as a contingent claim. The claims that Atlas are filing on are not unmatured, and they're certainly not contingent. Is the legitimacy of your position based on the business model of this particular company? If someone had simply purchased or maybe perhaps received the claim, but it hadn't been part of its business model, there'd been no intent to engage in this far-reaching scheme that you've alleged, does that make a difference? Yes, I think it makes a difference. And I think you may be alluding to the Henson decision, which just came out of this court. This is what these people do. I mean, they collect on debt. This is not some side ancillary part of a giant bank. So, yes, if your business model is to come in and collect on debt and you qualify under A6 of the FDCPA, then, yes, that's exactly what I'm referring to. This is just a side little part. No, it probably wouldn't fall within the scope of the FDCPA. I should point out, in all fairness, that I have sued under the Maryland statute as well. It's a much broader statute, and that should be addressed, although that particular statute does not provide for, let's say, $1,000, up to $1,000. It doesn't have a specific statutory amount. As I understand the law in this area, there's nothing wrong with a creditor seeking to collect on a debt like this short of litigation, is that right, as long as they don't violate the statute in some other, the FDCPA in some other way? No, I don't believe that's correct, Your Honor. I think if you look at 502B1 of the Bankruptcy Code, you're going to see a clear statutory mechanism for objecting to an unenforceable claim. I'm talking about under the FDCPA or state law collection efforts. It's clear that filing a lawsuit in state court on a stale claim violates the FDCPA. But short of that, there's nothing to bar a creditor from requesting that a debtor pay the claim. Is that right? If we're outside the judicial context and they just call you up on the phone and assume they can comply with all the different requirements, no. So where does this fall in the spectrum? I guess you think it falls closer to the ledger of litigation. Oh, I do, absolutely. And it's clearly how Crawford looks at this. I mean, that's a seminal decision on this case. And that's basically saying that the filing of a proof of claim is tantamount to state court litigation. And if you look at the statutory scheme of the Bankruptcy Code, Rule 3006, for example, has always been a direct analogy to a 41A dismissal. If I object to a proof of claim, they can just withdraw it. And I would also point out, while we're on that subject, that's an extremely important part of their business model. File an objection, they just withdraw. No harm, no foul. I send a 9011 letter, they just withdraw. They've complied with the safe-car provisions. No harm, no foul. Getting back to Judge Floyd's earlier question, and this seems to be the tenor of the brief on the other side, is that they're essentially providing a public service to the debtor by making it publicly known that there's an outstanding debt out there that needs to be resolved in some way and that short of that, the debt remains out there for collection in the future. Putting aside whether or not that's really the intent here, isn't there something to be said for that, that it's important to gather up all of these claims in one proceeding and resolve them once and for all? I will tell you that I can't keep a straight face with that either because it's absolutely a ludicrous position. They're not in business to serve as a martyr for time-barred payday lenders. That's not why they're buying up these claims, so that we can somehow help the public and they can get out of debt. That's not what they're doing. Now, I believe what you may be alluding to is, would this debt have simply passed through the Chapter 13 process had it not been listed? They have to show that they didn't have notice. That's part of this provision. Putting aside the fact that it's unenforceable on its face and that you can never collect on this in a state court proceeding, clearly barred by statute of limitations, and not going to be revived by receiving any payment if they're not filing their claim, they could not possibly be doing this. They're not in business so that debt can be officially discharged. And we're here, so they obviously had notice. I mean, clearly what's going on is all they're doing is just trolling pacer dots, hoping you can match up a social and file a claim. That's what's going on here. And that's why we need the FDCPA, because the bankruptcy code does not supply a sufficient remedy, but we wouldn't be here. I wouldn't be here. That's what Crawford saw, and that, I point out again, all this does is, one, perhaps provide an asset for the estate, ironically enough, an FDCPA $1,000 claim, if not exempted by the debtor, would then go to the Chapter 13 trustee to pay legitimate creditors. I also want to point out an extremely important principle of Chapter 13, and it is absolutely true in these two cases. These were not 100% cases. And the importance of a 100% case to an unsecured creditor is that the analysis stops. When a debtor gets 100% back to their creditors, we don't have to go to court anymore. We don't have to parade our clients up there anymore and try to argue over the means test. We've hit our 100% threshold, and we're done, because what could be better than paying everybody back in full? One of their major arguments is how, you know, these aren't 100% cases and all that. Well, you know, it wouldn't hurt if they could not file their claims because we can get to that 100% threshold a lot easier if I'm not knocking out five or six unenforceable claims with every single case. So this serves a huge benefit. We talk about the resources that Chapter 13 trustees might have. Well, they might have more resources if they were actually paying the right people. So I would suggest to this court that this is an important issue and that this serves both the purpose of the Bankruptcy Code and the Fair Deduction. Is there some remedy in the code itself that would suffice so that we don't need to look to the FDCPA? Your Honor, I see my time is up, but if you could please the court, I can answer that question. 9011 is not a subvision remedy. They can simply follow the safe harbor provision of 9011, withdraw their claim, and I'm stuck. And it has been clearly outlined through Supreme Court precedent that 105A is not to be used in the context of an objection to a proof of claim. Notwithstanding your characterization of their condo, under Maryland law, this debt still exists, even though it's barred by the statute of limitations. It's still a debt that's on your client's record. I mean, we would certainly dispute that that debt is on our client record in this certain case, but I think you're talking more broadly in the general scheme of things. Would the debt pass through theoretically if they had no notice of it? Perhaps. It depends on which kind of creditor it is. All right. Thank you. Mr. Maurice? Good morning, Your Honors. May it please the court, my name is Donald Maurice. I represent Atlas Acquisitions, the appellee, and I have here with me today Alan Hochheiser, who is on the brief and is also an attorney for Atlas Acquisitions. I want to make three important points, and I think that the panel has already identified them. That debts, even those that are subject to a defense of an expired statute of limitation, are still claims within the meaning of the code. And that the court below was correct when it found that the filing of a proof of claim is not a communication within the meaning of the FDCPA. But even if the FDCPA were to apply here, the conduct of Atlas does not violate it. A claim is something that the code defines very broadly. And as Judge Floyd pointed out, it includes contingent and disputed, unliquidated claims. I can file a proof of claim in a bankruptcy matter if I have such a disputed, unliquidated, or contingent claim. It doesn't have to be enforceable in a state lawsuit to be a proof of claim. When we talk about enforceable, we mean that someone has a right to payment, not that they have a right to a lawsuit. How do we know that? We know that because in the bankruptcy, in the Chapter 13 case, the debtor schedules their debts. And not all those debts are defaulted. Many of them are current and performing. And there's no right to file a lawsuit against a current and performing debt. The claims process allows creditors to say what they believe is due and owing. The bankruptcy process then determines whether or not a person gets paid. Or not paid, like was the case here. Atlas didn't receive any money in either of these bankruptcy cases. Their claim was objected to and was disallowed. Atlas did not fight that because the system works. We hear statements that trustees are overloaded and burdened, but there's nothing in the record to show that. That's just simply fantasy. But the reality is that your client wouldn't be in this business and wouldn't have conjured up this model if there were not some benefit to doing this, right? Well, I think every business's purpose is to make a profit. And certainly that's what Atlas's, I hope, is. I'd like to get my bill paid, too. Effectively, that means that you're counting on the fact that trustees are overburdened and unable to carefully scrutinize crucial claims, right? No, not at all. I think what Atlas counts on is the fact that there is an allowance for claims within the code and that it has taken a business decision. It makes a risk that some of these sums that it purchases, these defaulted debts, will be paid and some won't. And it understands that there are instances where those will be disallowed. It's not just the trustee who can object. The debtor can object or any other creditor can object to any of these claims. But the point is whether or not they are claims, Judge Diaz, not whether or not someone will object and it will be disallowed. As Judge London pointed out in In Re Edge, which we have briefed, just because a claim is disallowed doesn't mean it wasn't a claim in the first place. It's still a claim. It's just a disallowed claim. The court below did not find Atlas had an illegitimate claim. The court below found it had a claim but just disallowed it. And that is completely proper under the Bankruptcy Code. There could be many other reasons why claims are disallowed. Any defense under state law would be available to disallow a claim. So it doesn't affect the legitimacy of the claim, just the ability to have the claim paid for the bankruptcy plan. So when we look at this then, in the end we say, what was it that triggers this FDCPA claim? And what it is is the belief, and I think it's clearly a mistaken belief on the part of the 11th Circuit because it was the basis of their analysis, is that a proof of claim is the functional equivalent of a civil lawsuit. But that cannot be the case. And we know it's not the case because, as I pointed out, proofs of claim are filed by creditors in bankruptcy cases where there is no basis for a lawsuit. The debt is current. The debt is not defaulted. The creditor has no ability to bring a lawsuit, but the claim is still filed. It provides notice to the bankruptcy court, to the trustee, to the other creditors of what the amount is and the right to payment. It's nothing more than that. And to premise that on a civil lawsuit, if we're going to say it's like a civil lawsuit, then every debt collector who files a proof of claim for such current non-defaulted debts will be violating the FDCPA. How do we know that? The FDCPA applies to all debt, not just defaulted debt. And attorneys and others who represent creditors in collecting debts are debt collectors within the meaning of the Act. So to apply this here means that it's just as much of a false statement for a creditor to file a proof of claim on a performing debt because it then conveys that it's the same as a lawsuit when there is no basis to demand payment default. I mean, I think the bankruptcy code, if it doesn't mandate it, at least suggests that that's exactly what should happen. These claims should be filed so that all parties are aware of the existence of these claims. Absolutely, that the claims should be filed. It's beneficial. The code encourages that. Is the claim required to be filed? In some instances, yes.  Here, no. It wasn't required to be filed. But the bankruptcy code encourages the filing of the claims. And through the claims process, which is not a very difficult process and allows for efficiency, you don't have to file a complaint to knock out a claim. You simply object. It disallows claims and protects the interests of all parties. Why isn't this simply an end run around the state law prohibition against filing a lawsuit for unenforceable debt? Well, first of all, because it's not like a civil lawsuit. It's a claim. It's a proof of claim in a bankruptcy case, number one. Number two, we're looking at a whole different context. What does a state court lawsuit do? What is the creditor trying to do? They're trying to get a judgment to enforce their obligation. The whole of the obligation. What does the bankruptcy process do? By participating here, Atlas ends up getting its obligation that's owed to it discharged, destroyed. The consumer initiates the bankruptcy process, not the creditor. The creditor participates, knowing that the bankruptcy rules can very well disallow a claim or allow a claim. In the state court process, the creditor is seeking to enforce the entirety of the claim, the amount that's due. In the bankruptcy code, unsecureds get paid a small portion over time, and that debt is discharged. So there's a big difference between the two. Talk about your conclusion argument, if you hadn't agreed. Yes. The conclusion? Why should we decide this case on the basis of preclusion? Preclusion? I think that the problem is with how the FDCPA can be applied to all different types of debts, not just defaulted debts, but current debts. In the context, at least, of a proof of claim, as I said before, if an attorney who represents creditors and regularly files proofs of claims, let's say on mortgages, files a proof of claim against a secured claim, the mortgage, and that mortgage is current and not in default. If we're saying that it's the functional equivalent of a lawsuit, a demand for payment, well, there's no payment that's due because the payment isn't due in full because it's performing. We also run into the problem now of saying, now are these attorneys and these others who are filing these proofs of claim regularly, they're not the creditor, they work for the creditor, are these debt collectors within the FDCPA? They would then have to send a letter giving the consumer certain rights under 1692G, which I think conflict with the Code. One of the rights is to dispute the amount due, and then the creditor can't take any further action until it provides verification of that debt. And the Bankruptcy Code has its own time requirements, which are implicated and often would conflict with the creditor's ability to file timely in some instances. We also have, we would have under 1692E11, the FDCPA requires me to put in every communication, if I'm a debt collector, that I'm a debt collector. This is an attempt to collect a debt. And that may send the wrong connotation, especially to unrepresented consumers, that there's an actual debt collection activity occurring. Attorneys often do represent consumers in bankruptcy cases, but just the fact that there are pro se bankruptcy litigants is something that I think we should understand happens, maybe infrequently, but it still happens. These people would be receiving communications that have mandatory disclosures, which would lead them to believe that there's a debt collection activity occurring through the FDCPA's mandatory disclosures. Do you have anything further? I do not. All right. Thank you very much. Thank you. Mr. Fisher. Thank you. I'd like to address a number of those arguments very quickly. First of all, under 1692GD and then 1692E11, those mandatory notices, the validation notice, that's not required in litigation activity. It's universally held that in litigation, the debt validation notice is not part of a complaint. A debt buyer that goes out and just sues does not need to send a 1692GD letter first. So that would be inapplicable. That is another distraction that is just getting us apart from what this business model is. I'm buying unenforceable debt. I'm hoping it slips through the cracks. I'm going to make a profit. That's what's going on here. There is absolutely no reason why the FDCPA can't be harmonized with the Bankruptcy Code. We are only talking about a very narrow class of creditors, albeit a large one, in as much as a dispute over whether, say, $1,500 is owed or $1,450. That would not meet the unenforceable carve-out that we're discussing here. It's just a dispute over the amount that's owed. The reason why the FDCPA even is being discussed here is because unenforceable is not part of the statutory scheme of the definition of what a claim is. I think that's an extremely important point. I'd like to also point out that a proof of claim, unlike a state court lawsuit, enjoys prima facie validity. Absent an objection, it just gets passed through. So it's even worse than a state court lawsuit. A state court judge can sit there and say, well, this is nine years old. To be one of the disclosures here, I'm not going to enter a default judgment in this situation. A bankruptcy judge is not at liberty to do that absent an objection. Objections cost the estate money. Not with Ms. Dubois, but with Ms. Atkins, I opted out of the flat fee agreement, which means if I'm filing an objection, I need to put on evidence because I have to overcome that prima facie validity. I'm going to court. Maybe I might have to take testimony, depending on which Maryland bankruptcy judge is there. Somebody's missing work. I'm billing the estate. I have an administrative claim. I'm reducing that distribution to unsecured creditors. I'm actually not sure what's more offensive, the filing of an unenforceable claim or the fact that I have to go to court and then bill the estate to do it. Either way, they're hurting the system. This is not, as we put it, whack-a-mole. That's not what we're doing here. We're not just coming in, having to go through and object to all of this. We're trying to pay the right people back. We're trying to keep whatever property we can. And we're trying to enjoy the benefit of the automatic stay for five years. The FDCPA, and this is pointed out in Simmons, in the second court, Simmons said, no, we're not going to allow it, the FDCPA, on an inflated claim. Well, an inflated claim is different from an unenforceable claim. And that's the distinction that we're really trying to draw here. As far as only a few people file pro se, it's actually about 20%. Just like state court, we're talking about a default setting. In terms of the debt destruction argument, I guess I would sum up by saying this. You can't RSVP to a party that you weren't invited to in the first place. This idea that this is debt destruction is absolutely ludicrous. They're doing none of us any favors, and they're serving only their own purpose. All right. Thank you, Mr. Chairman. The court will come down and recounsel.
judges: Albert Diaz, Henry F. Floyd, Stephanie D. Thacker